UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Respondent,<br><br>vs.<br><br>MANUEL DELGADO-NUNEZ,<br><br>        Petitioner. | CASE NO. CV 04-06740 MMM<br>               CR 99-00486 MMM ✔<br><br>ORDER DENYING PETITIONER'S MOTION TO VACATE AND SET ASIDE SENTENCE UNDER 28 U.S.C. § 2255 |

Petitioner Manuel Delgado-Nunez has filed a motion under 28 U.S.C. § 2255 seeking to vacate his 120-month sentence. Citing *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), petitioner argued that he was sentenced in violation of his Fifth and Sixth Amendment rights. Since the time Delgado-Nunez filed his motion, the Supreme Court has extended *Blakely* to the Federal Sentencing Guidelines. See *United States v. Booker*, 543 U.S. 220 (2005). Accordingly, the court will consider Delgado-Nunez's *Blakely* claim in light of *Booker*. Delgado-Nunez's second claim is that his attorney provided ineffective assistance of counsel. Finally, Delgado-Nunez contends that he was sentenced in violation of his Sixth Amendment rights under *Crawford v. Washington*, 541 U.S. 36 (2004). Delgado-Nunez seeks the appointment of counsel, a new sentencing hearing consistent with *Crawford*, an evidentiary hearing, and re-sentencing in accordance with *Blakely* and *Booker*. All of Delgado-Nunez's claims fail because none of *Blakely*, *Booker* or *Crawford* applies retroactively, and Delgado-Nunez has failed to establish either

deficient representation or prejudice.

## I. FACTUAL BACKGROUND

On May 11, 1999, a federal grand jury in the Central District of California returned a 10-count indictment charging Delgado-Nunez and multiple co-conspirators with violating 21 U.S.C. § 846 (conspiracy) and 21 U.S.C. § 841(a)(1) (distribution of a controlled substance and possession of a controlled substance with intent to distribute).[1] The gravamen of the charges was that Delgado-Nunez participated in a conspiracy to distribute heroin and methamphetamine.[2]

On July 24, 2000, Delgado-Nunez pled guilty to one count of conspiracy to possess methamphetamine and heroin with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1).[3] Count one charged that Delgado-Nunez coordinated and directed the sale and delivery of methamphetamine and heroin under the direction of co-conspirator Gabino Meza-Nunez.[4] The co-conspirators sold the methamphetamine and heroin to a confidential informant ("CI").[5] There was no written plea agreement.

On December 2, 2002, the court sentenced Delgado-Nunez to a term of 120-months in prison, three years supervised release, and a mandatory special assessment of $100.[6] This sentence was based on the court's finding that Delgado-Nunez was responsible for the distribution of more than 50 grams of methamphetamine, a finding that mandated imposition of a 10-year mandatory minimum sentence under § 841(b).[7] The dispute at sentencing was whether Delgado-

---

[1] See Indictment.

[2] See *id.* at 1-2.

[3] See Change of Plea Minute Order, July 24, 2000.

[4] See Indictment at 1-6.

[5] See *id.*

[6] See Criminal Minutes at 1, Dec. 2, 2002.

[7] See *id.* at 2.

Nunez was involved in certain drug transactions at which he was not personally present.[8] The court found for the government on this issue.[9] The judgment and commitment order was entered on December 30, 2002.[10]

On July 25, 2003, a panel of the Ninth Circuit affirmed Delgado-Nunez's sentence. See *United States v. Delgado-Nunez*, 70 Fed. Appx. 953 (9th Cir. July 21, 2003) (Unpub. Disp.). On October 23, 2003, Delgado-Nunez filed a petition for writ of certiorari in the United States Supreme Court,[11] which was denied on December 8, 2003.[12] Delgado-Nunez filed the present motion under 28 U.S.C. § 2255 on August 12, 2004.[13]

## II. DISCUSSION

### A. Legal Standard Governing § 2255 Motions

A petitioner may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Section 2255 provides:

> "[A] prisoner in custody under sentence of a court established by an Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.

---

[8] See Reporter's Transcript at 108-11.

[9] See *id.* at 110.

[10] Judgment and Probation/Commitment Order at 2.

[11] Court of Appeals Docket #03-50010, Entry Dated Nov. 5, 2003.

[12] Court of Appeals Docket #03-50010, Entry Dated Dec. 12, 2003.

[13] See Pet.'s Mot. at 1.

If any of these grounds exists, the court "shall vacate and set the judgment aside and shall discharge the prisoner or release him or grant a new trial or correct the sentence as may appear appropriate." *Id.* Where the motion, files, and records of the case "conclusively show that the prisoner is entitled to no relief," the court need not hold an evidentiary hearing to address his allegations. 28 U.S.C. § 2255; see also *United States v. Zuno-Arce*, 209 F.3d 1095, 1102 (9th Cir. 2000), rev'd. on other grounds, *Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002); *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986).

### B. Whether *Blakely* and *Booker* Apply Retroactively

Delgado-Nunez first seeks the vacation of his sentence under *Blakely* and *Booker*, arguing that the drug quantities used to fix his sentence were not found by a jury beyond a reasonable doubt. Petitioner's conviction became final before either *Blakely* or *Booker* was decided when the Supreme Court denied his petition for writ of certiorari on December 8, 2003. See *United States v. Colvin*, 204 F.3d 1221, 1223, n. 2 (9th Cir. 2000) (stating that a conviction becomes final when the Supreme Court denies a petition for writ of certiorari); see also *Robinson v. United States*, 416 F.3d 645, 647 (7th Cir. 2005) (holding that a conviction becomes final "when the Supreme Court affirms on the merits on direct review or denies certiorari, or the time for filing a certiorari petition expires"); *Sepulveda v. United States*, 330 F.3d 55 (1st Cir. 2003) ("A federal criminal conviction becomes final when the Supreme Court denies certiorari," citing *Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires").

As a result, petitioner's argument based on the decisions fails, since the Ninth Circuit has held that neither *Booker* nor *Blakely* applies retroactively on collateral review. See *United States v. Cruz*, 423 F.3d 1119, 1121 (9th Cir. 2005) ("*Booker* is not retroactive, and does not apply to caes on collateral review where the conviction was final as of the date of *Booker*'s publication"); *Schardt v. Payne*, 414 F.3d 1025, 1027, 1033-36 (9th Cir. 2005) (refusing to give retroactive effect to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004)).

4

## C. Delgado-Nunez's Ineffective Assistance Claims

Delgado-Nunez next asserts two ineffective assistance of counsel claims. He contends that counsel was deficient at the change of plea hearing because he failed to object when the government's attorney recited inaccurate facts and when the nature of the charge to which Delgado-Nunez was to plead guilty was not explained.[14] Delgado-Nunez also argues that counsel was deficient at sentencing because he failed to challenge Delgado-Nunez's involvement in a particular drug transaction.[15]

Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

### 1. Delgado-Nunez's Claim That Counsel Was Ineffective at the Change of Plea Hearing

Delgado-Nunez's claim that his counsel's performance at the change of plea hearing was deficient lacks merit. Although unclear, it appears that Delgado-Nunez contends he was asked to admit a factual basis for the plea that concerned acts committed by a co-defendant. He also appears to assert that the nature of the charge against him in Count 1 – i.e., the legal elements of the offense – was not explained to him. Finally, he contends that the government "amended" the indictment to add facts regarding the quantities of drugs that were involved in transactions in

---

[14]See Pet.'s Mot. at 5.

[15]See *id.* at 8.

1 which he participated.[16]

2 In support of his claims, Delgado-Nunez cites *United States v. Smith*, 60 F.3d 595 (9th Cir.
3 1995).[17] *Smith* requires that the nature of the charges be explained to a defendant before he or she
4 enters a plea of guilty, and that a failure to do so requires vacation of the plea. See *id.* at 597.
5 In articulating this rule, the *Smith* court distinguished between the facts underlying the plea and
6 the nature of the charge set out in the indictment. Explaining the nature of the charge requires a
7 specification of the crime alleged and an understanding of the law in relation to the facts. *Id.*
8 (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969)).

9 Here, the transcript of the plea hearing shows that government counsel stated that Count
10 1 charged a violation of 21 U.S.C. § 846, that is, conspiracy to possess with heroin and
11 methamphetamine with intent to distribute. He also described the elements of the offense, i.e.,
12 the things that the government would have to prove if the count went forward to trial against
13 defendant. The court asked Delgado-Nunez if he understood the prosecutor's explanation, and
14 if he had discussed the elements of the offense with his attorney. It inquired whether Delgado-
15 Nunez had any questions regarding the charge against him in Count 1. Delgado-Nunez said he
16 did not. Based on the colloquy conducted, the court concludes that Rule 11's requirement that it
17 inquire whether the defendant understands the nature of the charge to which he is pleading guilty
18 was satisfied in this case. Delgado-Nunez's counsel not deficient in failing to object on this basis.

19 The court also concludes that there was no error in the factual basis to which Delgado-
20 Nunez agreed, i.e., that it included transactions in which Delgado-Nunez was involved and not
21 transactions solely involving a co-defendant. At the plea hearing, the government indicated that,
22 if the case were to proceed to trial, it would show that defendant intentionally agreed with co-
23 defendants Francisco Martinez Torres and Gambino Meza Nunez to distribute heroin and
24 methamphetamine. It identified four transactions in which defendant was involved – a delivery
25 by Martinez Torres on April 1, 1999 to a confidential informant, which was carried out pursuant,

---

[16] Pet.'s Mem. at 2-3.

[17] See *id.*

6

*inter alia*, to Delgado-Nunez's instructions; the direction that Delgado-Nunez gave Martinez Torres on April 2, 1999 to retrieve methamphetamine from a hidden location and Delgado-Nunez's delivery of the drugs to the confidential informant; a transaction on April 3, 1999 in which Martinez Torres delivered methamphetamine to the confidential informant, with Delgado-Nunez receiving a percentage of the payment; and a meeting between Martinez Torres and the confidential informant on April 17, 1999, at which Martinez Torres accepted a partial payment of $1,000 from the confidential informant on his own behalf and on behalf of Delgado-Nunez. As recited by the government, and admitted by Delgado-Nunez, Delgado-Nunez was involved in each of these transactions even if he did not personally meet or speak with the confidential informant. Consequently, the court concludes that there was no error in the factual basis for Delgado-Nunez's plea, and that his counsel was not deficient in failing to object on this basis.

As respects the fact that the government stated it would prove that certain quantities of drugs were involved in the transactions if the case went to trial, this did not constitute an "amendment" of the indictment as Delgado-Nunez contends. Neither the court nor the government required that Delgado-Nunez agree to the quantities as a condition of entering his guilty plea, and his attorney specifically reserved the right to challenge the quantities at the time of sentencing. Because the drug quantities involved in the offense did not expose Delgado-Nunez to a higher statutory maximum punishment, moreover, the government was entitled to prove the quantities at sentencing by a preponderance of the evidence under then-current Ninth Circuit law. See *United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002) (en banc) (holding that drug quantity allegations that could increase a defendant's sentence beyond the statutory maximum to which he would otherwise be subject had to be submitted to a jury and proved beyond a reasonable doubt). Accordingly, Delgado-Nunez's counsel was not deficient for failing to object to the government's identification of the drug quantities involved in the offense.[18]

Accordingly, Delgado-Nunez's claim that his attorney rendered ineffective assistance of

---

[18]To the extent Delgado-Nunez contends that *Buckland* was overruled by *Blakely* and *Booker*, moreover, his argument is foreclosed because those decisions do not apply retroactively on collateral review.

counsel at the time of the plea hearing fails, and the court need not consider prejudice.

**2.     Delgado-nunez's Claim That Counsel Was Ineffective at Sentencing**

Delgado-Nunez next contends that his attorney was deficient at sentencing because he failed to call Delgado-Nunez as a witness during the hearing. He asserts:

> "Counsel was incompetent at the sentencing hearing where he was aware that his client was to be charged with actual amounts of Methamphetamine . . . on three different dates. Petitioner['s] position was that he was not involved on April 3rd, which would have resulted in a 5 year to 40 year sentence and a range of 70 months. Counsel should have brought forward information which showed that co-defendant Martinez lived in the same house as petitioner. This fact was brought to light by the court when it passed judgment on this question no less than three times. . . . Counsel should have proven that the sole reason why Martinez was in petitioner['s] house, making drug deals in the house and using the phone at the house was because he lived in the house. . . . Petitioner could have taken the witness stand and testified to this. . . . This April 3rd finding is wrong, and due to counsel's error in failing to investigate into this case and ask his client about this matter."[19]

At sentencing, Delgado-Nunez argued that he was not involved in the April 3, 1999 transaction because there was no evidence that he was present during the transaction, that he gave Martinez Torres any instructions regarding it, or that Martinez Torres spoke with him before making the sale. Delgado-Nunez asserted that he told the confidential informant prior to the sale that he believed his house was under surveillance and argued that he would not have allowed the transaction to take place at his residence if he had been involved in it. The court noted that the sale involved methamphetamine, which was the drug Delgado-Nunez sold for Meza Nunez, that there was evidence that Martinez Torres told the informant to negotiate the price of the sale with Delgado-Nunez, and that Martinez Torres had previously followed Delgado-Nunez's instructions

---

[19]Pet.'s Mem. at 8-9.

in retrieving and delivering methamphetamine to the informant. It concluded that these facts indicated Delgado-Nunez was involved in the April 3 transaction. The court also found, however, that, particularly because the transaction occurred at Delgado-Nunez's home and involved someone who had taken direction from him in the past, Martinez Torres' activities were reasonably foreseeable to Delgado-Nunez as part of the jointly undertaken narcotics activity. The Ninth Circuit affirmed this finding of reasonable foreseeability. See *Delgado-Nunez*, 70 Fed. Appx. at 954 ("The district court did not clearly err in finding that Nunez reasonably foresaw the April 3, 1999, transaction. Although Nunez was not present, the transaction took place at his home, the drugs were sold by a co-conspirator, the co-conspirator had told the confidential informant who purchased the drugs that he would negotiate the price with Nunez, Nunez had given the co-conspirator instructions on prior occasions regarding retrieving and delivering methamphetamine, and the confidential informant returned to Nunez' home three days later to pay Nunez and left the money with the co-conspirator because Nunez was not home. . . . Accordingly, the district court did not err in counting the drugs from the April 3, 1999, transaction in calculating Nunez' sentence").

      Delgado-Nunez's contention that his attorney should have called him to testify that Martinez Torres lived in his house and conducted drug transactions from that location would not have assisted in demonstrating that Martinez Torres' activities were not reasonably foreseeable to Delgado-Nunez. If anything, it would have provided additional support for the finding of reasonable foreseeability. Furthermore, as the government notes, had Delgado-Nunez testified, he would have been subject to cross-examination regarding his involvement in the offense, which might have harmed the arguments he sought to present at sentencing. Accordingly, the court cannot find that counsel's decision not to call Delgado-Nunez as a witness at the sentencing hearing constituted deficient performance. See *Strickland*, 466 U.S. at 688-89 ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making

tactical decisions"); *Wilson v. Henry*, 185 F.3d 986, 991 (9th Cir. 1999) ("Counsel's choice to rely on [jurors'] commitment [to be fair], without emphasizing his client's criminal history, merits deference as a tactical decision"). Accordingly, Delgado-Nunez's attack on his counsel's performance at sentencing fails.

### D. Whether *Crawford* Applies Retroactively

Delgado-Nunez's final argument is that his sentence was imposed in violation of his Sixth Amendment right of confrontation. He contends that *Crawford v. Washington*, 541 U.S. 36 (2004), applies retroactively and that he is therefore entitled to a new sentencing hearing. Specifically, Delgado-Nunez alleges:

> "[T]hus we see at the hearing . . . petitioner['] . . . 6th [Amendment] right was violated due to the court failing to call forward the witnesses but relying on hearsay out of court statements made by the CI, and the police reports. For it was the CI who placed petitioner at the scene of the offense concerning petitioner telling Martinez to retri[e]ve drugs, and that Martinez was to pay the money to petitioner, and that Meza told the CI to 'go through petitioner.' . . . These statements were used . . . by the court [in] . . . finding . . . punishment and . . . enhancements. Petitioner was never allowed to cross-examine anyone or question any statements made against him by the CI or out of court reports."[20]

The Supreme Court has held that *Crawford* does not apply retroactively to claims on collateral review. *Whorton v. Bockting*, __ U.S. __, 127 s.Ct. 1173, 1177 (2007). 399 F.3d 1010, 1012, 1014-21 (9th Cir. 2005).[21] Consequently, Delgado-Nunez's claim based on *Crawford*

---

[20]Pet.'s Mem. at 13.

[21]Even before *Crawford*, moreover, the Ninth Circuit and other courts had held that the Confrontation Clause does not apply at sentencing. See, e.g., *United States v. Littlesun*, 444 F.3d 1196, 1199-1200 (9th Cir. 2006) ("[H]earsay is admissible at sentencing, so long as it is accompanied by some minimal indicia of reliability" (internal citation and quotation marks omitted); *United States v. Petty*, 982 F.2d 1365, 1368-69 (9th Cir. 1993), as amended, 992 F.2d 1015 (collecting cases), cert. denied, 510 U.S. 1040 (1994); see also *United States v. Luciano*, 414 F.3d 174, 178-79 (1st Cir. 2005) ("Nothing in *Crawford* requires us to alter our previous

therefore fails.

### III. CONCLUSION

For the foregoing reasons, petitioner's § 2255 motion is denied.

DATED: September 22, 2008

                                  */s/ Margaret M. Morrow*
                                  MARGARET M. MORROW
                                  UNITED STATES DISTRICT JUDGE

---

conclusion that there is no Sixth Amendment Confrontation Clause right at sentencing"); *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005) ("[T]he relevant provision at sentencing is the due process clause, not the confrontation clause; *Williams* [*v. New York*, 337 U.S. 241 (1949),] shows that witnesses providing information to the court after guilt is established are not accusers within the meaning of the confrontation clause. Sentencing judges are entitled to use any 'procedures adequate to reach informed and accurate decisions in the main'"); *United States v. Martinez*, 413 F.3d 239, 243-44 (2d Cir. 2005) (holding that *Crawford* did not apply to sentencing proceedings).